## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WALDON MICHAEL HINGLE | |
| Plaintiff, | |
| v. | No. 2:17-cv-09370 |
| EQUIFAX INFORMATION SERVICES, LLC, | CLASS ACTION |
| | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT AT LAW

Plaintiff, WALDON MICHAEL HINGLE, individually and on behalf of those similarly situated, complaining of defendant, Equifax Information Services, LLC, state as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, WALDON MICHAEL HINGLE is a natural person and, at all times relevant, have resided in Slidell, LA. Plaintiffs is a "consumer" as defined by 15 U.S.C. § 1681a(c).

2.      Defendant Equifax is a limited liability company incorporated under the laws of the State of Georgia with a principal place of business in Atlanta, Georgia. Defendant is registered to do business in Louisiana and conducts business in Louisiana.

3.      Equifax is a "Consumer Reporting Agency" (CRA) as defined by 15 U.S.C.

§ 1681a(t).

4.     Equifax is a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis" as defined by 15 U.S.C. § 1681a(p).

5.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because the Plaintiffs allege violations of federal law, namely the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereafter "FCRA").

6.     This Court also has supplemental jurisdiction over all state-law claims pursuant to 28 U.S.C. § 1367.

7.     Venue in the Eastern District of Louisiana is proper pursuant to 28 U.S.C. § 1391(b) and (c). The Plaintiff resides within this District, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Equifax regularly conducts business in this District.

II. GENERAL ALLEGATIONS

8.     Equifax is in the business of collecting, assessing, storing, and maintaining the information of approximately 800 million worldwide consumers. Equifax collects and stores this information in order to sell it to third parties in the form of consumer credit reports, insurance reports, and other consumer demographic and analytics information.

9.     Equifax also markets and sells credit protection and identity theft monitoring services to the consumers whose personal information Equifax collects.

10.     The United States Congress enacted the FCRA to insure fair and accurate credit reporting, to promote efficiency in the banking system, and to protect consumer privacy.

11.     The FCRA requires Consumer Reporting Agencies (CRAs), including defendant

Equifax, to protect consumers' privacy by preventing inappropriate disclosure of private information. To comply, CRAs must maintain reasonable procedures to ensure that third-party disclosures are made exclusively for permissible purposes.

12.     On or about July 29, 2017, Equifax discovered that one or more of its servers, which contained Plaintiffs' and Class Members' sensitive personal information including names, full Social Security numbers, birth dates, addresses, and, upon belief, their driver's license numbers and possibly one or more of their credit card numbers, had been breached or "hacked" by a still unknown third party (the "Breach"). Such information constitutes a "consumer report" as defined by the FCRA because it is information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."

13.     In early August 2017, before the fact of the Breach was made public, multiple Equifax executives sold shares of Equifax stock, worth at least $1.8 million.

14.     Upon information and belief, when Equifax discovered the Breach, Equifax immediately began an internal investigation and contracted with an unidentified third-party cybersecurity firm to conduct review to determine the scope of the hack, including identifying the specific data impacted. That investigation remains ongoing and has yet to be completed despite over six weeks elapsing since the Breach.

15.     On September 7, 2017, major news outlets began reporting on the Breach.

16.     These news stories were the first the Plaintiffs and all potential Class Members learned that their information secured by Equifax had been compromised six weeks earlier. They now live in constant fear that their information is in the hands of criminals.

17.     Equifax's decision to wait six weeks after the Breach before informing all consumers was willful and wanton, as well as negligent. By depriving the Plaintiffs and Class Members information about the Breach in a timely manner, Equifax subjected each consumer to a concrete informational injury, as these consumers were deprived of an opportunity to meaningfully consider and address issues related to the potential fraud, as well as to avail themselves of the remedies available under the FCRA to prevent further dissemination of their private information, including but not limited to the potential remedies under 15 U.S.C. §§ 1681g, 1681c-l, and 1681c-2.

18.     Equifax has been subject to numerous alleged data breaches in the past, yet has failed to enact reasonable procedures to ensure that consumer reports would only be provided for a permissible purpose.

19.     The harm to Plaintiffs and Class Members was complete at the time the unauthorized breaches occurred, as the unauthorized disclosure and dissemination of private credit information causes harm in and of itself.

20.     On September 7, 2017, Equifax began to offer consumers like the Plaintiffs and Class Members an allegedly dedicated secure website where consumers could determine if their information was compromised (https://www.equifaxsecurity2017.com) and offer consumers "free" credit monitoring through an Equifax product, TrustedID Premier (https://www.equifaxsecurity2017.com/enroll/), for one year.

21.     Under the guise of an effort to mitigate damages and to provide some assistance to the victims of its data breach, including Plaintiffs and Class Members, by allowing them "free" access to Defendant's TrustedID Premier service, Defendant, through the terms and conditions of

that "free" access, attempted to induce the victims, including Plaintiffs and Class Members, to waive their rights to bring or participate in a class action lawsuit and require them to submit to arbitration (http://www.equifax.com/terms/) . This conduct also acted to deprive the Plaintiffs and Class Members of the ability to avail themselves of the remedies available under state and federal laws to obtain compensation for the data breach and prevent further dissemination of their private information.

22.     As a proximate result of the Defendant's failure to secure and safeguard the private information it collects, stores, and sells, the Plaintiffs' and Class Members' private information was accessed and stolen by hackers.

23.     As a further proximate result of the defendant's acts or omissions, the Plaintiffs and Class Members have been subjected to an imminent and immediate but continuing and ongoing risk of identity theft and identity fraud.

III. CLASS ALLEGATIONS

24.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23, *inter alia,* on behalf of a nationwide class of all similarly situated persons ("class"), defined as:

> All persons in the United States whose private, personal information was impermissibly released as a result of the data breach between May, 2017 and the present.

Excluded from the Class are:

(a)     Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and

directors;

(b)     the Judge to whom this case is assigned and the Judge's immediate family;

(c)     any person who executes and files a timely request for exclusion from the Class;

(d)     any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and

(e)     the legal representatives, successors and assignees of any such excluded person.

25.     Plaintiffs also bring this action on behalf of a subclass of all similarly situated individuals in Louisiana ("Subclass") defined as: "all persons in Louisiana for whom Equifax stored private personal information that was released as a result of the data breach."

Excluded form this Subclass are:

(a)     Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors;

(b)     the Judge to whom this case is assigned and the Judge's immediate family;

(c)     any person who executes and files a timely request for exclusion from this Class;

(d)     any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and

(e)     the legal representatives, successors and assignees of any such excluded person.

26.     The putative class is, through information and belief, comprised of thousands or millions of persons, making joinder impractical. Disposition of this matter as a class action will

6

provide substantial benefits and efficiencies to the parties and the Court.

27.     The rights of all Class Members have been violated in an identical, or nearly identical way and questions of law and fact common to the proposed class predominate over any individual questions. These questions common to all Class Members include, but are not limited to:

a.     Whether Defendant promulgated, implemented and enforced reasonable procedures to prevent unauthorized access of the least of the Plaintiffs' and Class Members' private information;

b.     Whether Defendant failed to notify or warn the Plaintiffs and Class Members of the data breach in a reasonable manner, within a reasonable time;

c.     Whether Defendant failed to take reasonable steps to protect consumers it knew, or should have known, were affected by the data breach;

d.     Whether the Plaintiffs and Class Members suffered damages as a result of the data breach;

e.     Whether the Plaintiffs and Class Members are entitled to statutory damages; and

f.     Whether the Plaintiffs and Class Members are entitled to punitive damages.

28.     Plaintiffs' claims are typical of claims of the Class, as all arise from the same operative facts and are based on the same legal theories.

29.     Plaintiffs and counsel will adequately represent the interests of the class and do not have any interest adverse to the class.

30.     Prosecution of separate actions by individual Class Members will create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the parties opposing the class.

31.     Plaintiffs' counsel has experience in litigating complex mass-torts and class actions.

32.     Class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class Members in individually controlling prosecution of separate claims against Defendant is small. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class Members may be obtained using Defendant's records.

33.     Class certification is appropriate pursuant to FED. R. *CIV*. P. 23(b)(3) because the common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

34.     Class certification is also appropriate pursuant to FED. R. CIV. P. 23(b)(2) because Defendant has acted, or refused to act, on grounds generally applicable to the class, thereby making final injunctive relief appropriate with respect to the class as a whole.

35.     The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.

## COUNT I

Fair Credit Reporting Act

36.     Plaintiffs hereby restate and incorporate by reference all allegations contained in paragraphs 1-35.

37.      On, before, and after July 29, 2017, Defendant, Equifax Information Services, LLC, failed to implement or enforce reasonable procedures to protect the Plaintiffs' and Class

Members' private information, in violation of 15 U.S.C. § 1681, *et seq.*

38.     As a proximate result of Defendant's willful and negligent acts or omissions, the Plaintiffs' and Class Members' private information was compromised.

39.     Defendant failed to notify the Plaintiffs or Class Members regarding the compromise of their private information and the Plaintiffs and Class Members only became aware through media reports approximately six weeks after the Breach.

40.     As a proximate result of each and every willful violation of the FCRA, Plaintiffs and Class Members seek:

        a.     Actual damages in accordance with 15 U.S.C. § 1681n(a)(l);

        b.     Statutory damages, 15 U.S.C. § 1681(a)(l);

        c.     Punitive damages, 15 U.S.C. § 1681n(a)(2); and

        d.     Reasonable attorney's fees and costs 15 U.S.C. § 1681n(a)(3).

41.     As a proximate result of every negligent violation of the FCRA, the Plaintiffs and Class Members seek:

        a.     Actual damages 15 U.S.C. § 1681o(a)(l); and

        b.     Reasonable attorney's fees and costs 15 U.S.C. § 1681o(a)(2).

COUNT II

Louisiana Unfair Trade Practices and Consumer Protection Law

42.     Plaintiffs hereby restate and incorporate by reference all allegations contained in paragraphs 1-35.

43.     This count applies to the Louisiana class.

44.     At all times relevant, the Louisiana Unfair Trade Practices and Consumer Protection Law, hereinafter referred to as "LUTPCP."

9

La.R.S. 51: 1401 , *et seq.,* was in full force and effect and applicable to the Defendant's conduct.

45.     The LUTPCP prohibits unfair or unlawful business acts of practices.

46.     On, before, and after July 29, 2017, Defendant engaged in unfair and unlawful acts and practices in one or more of the following ways:

        a.    Failed to implement and enforce reasonable and adequate procedures to protect the Plaintiffs' and Class Members' private information;

        b.    Furnished consumer reports that it knew, or should have known, were not sought for a permissible purpose;

        c.    Failed to timely notify or warn the Plaintiffs and Class Members of the Breach;

        d.    Attempted to induce consumers to sign a broad class action waiver and arbitration agreement which would only benefit Defendant through the suppression and concealment of material facts; and

        e.    Otherwise engaged in conduct contrary to public policy.

47.     As a proximate result of one or more of the foregoing acts or omissions, the Plaintiffs and the Louisiana Class Members suffered injuries of a personal and pecuniary nature.

COUNT III

Louisiana Databreach Security Notification Law

48.     Plaintiffs hereby restate and incorporate by reference all allegations contained in paragraphs 1 through 35.

49.     The private information improperly released in the Breach is "Personal Information" as defined by the Louisiana Databreach Security Notification Law hereinafter referred to as "LDSNL."

51.     Defendant violated La. R.S. 51:3074 by failing to notify Louisiana residents of the Breach without delay and in the most expedient way possible.

52.     As a proximate result of Defendant's violation, Plaintiffs and the Louisiana Class Members have suffered injuries of a personal and pecuniary nature.

## COUNT IV

**Declaratory Judgment/Injunctive Relief**

53.     Plaintiffs hereby restate and incorporate by reference all allegations contained in paragraphs **1** through 35.

54.     Defendant falsely represented that Defendant offers complimentary one-year enrollment of its TrustedID Premier product for affected persons.

55.     Through this offer, Defendant attempted to bind persons who enroll in the service to a set of terms, posted on its website, which include a binding arbitration provision. As a result, Defendant's offer is not complimentary and employs deception and coercion in an unconscionable effort to bind affected persons to arbitrate their claims and give up important rights and remedies.

56.     Plaintiffs and the other Class Members seek an injunction against Defendant from making misrepresentations during the course of attempting to comply with its legal obligations to notify affected individuals.

57.     Plaintiffs and the other Class Members also seek a declaration that any use of Defendant's purportedly complimentary credit protection services do not waive claims against Defendant or otherwise bind or constitute consent or agreement in any way.

COUNT V

**Negligence**

58.     Plaintiffs hereby restate and incorporate by reference all allegations contained in paragraphs 1 through 35.

59.     On, before, and after July 29, 2017, Defendant was negligent in one or more of the following ways:

      a.     Failed to implement and enforce reasonable processes to protect the Plaintiffs' and Class Members' private information from impermissible disclosure;

      b.     Failed to prevent unauthorized access to the Plaintiffs' and Class Members' private information;

      c.     Failed to timely discover the Breach; and

      d.     Failed to timely notify and warn the Plaintiffs and Class Members of the Breach.

60.     As a proximate result of one or more of the foregoing negligent acts or omissions, the Plaintiffs and Class Members suffered injuries of a personal and pecuniary nature.

IV. **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, WALDON MICHAEL HINGLE, individually and on behalf of all members of the class proposed in this complaint, respectfully request a judgment against Defendant, Equifax Information Services, LLC, and the following relief:

      a.     Certification of the class and subclass as requested herein, designating Plaintiff, WALDON MICHAEL HINGLE, as Class Representative, and appointing Waldon Michael Hingle, as Class Counsel;

12

b.    An award of actual damages against Defendant for all allegations in Count I-III

c.    An award for punitive damages, as allowable by law, to the Plaintiffs and Class Members;

d.    An award of statutory damages to Plaintiffs and Class Members;

e.    A preliminary and permanent injunction prohibiting the deceptive conduct described in Count IV;

f.    An order declaring any arbitration clause and class action waiver in the TrustedID Premier Terms of Use invalid and inapplicable to any claims or rights possessed by the Plaintiffs and Class Members as a result of the Breach;

g.    An award of attorney's fees and costs, as allowed by law;

h.    An award of pre- and post-judgment interest, as allowed by law; and

1.    All other relief deemed just and proper by the Court.


MICHAEL HINGLE & ASSOCIATES, LLC

/s/ Michael Hingle
Michael Hingle, T.A. (LA Bar #6943)
Michael Hingle, III (LA Bar #33183)
Bryan Pfleeger, (LA Bar #23896)
220 Gause Boulevard
Slidell, LA 70458
Telephone: (985) 641-6800
Facsimile: (985) 646-1471
christina@hinglelaw.com

*Attorney for Plaintiff*